```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                  EASTERN DIVISION


GWENDOLYN BLAKELY AND
DELORIS TERRELL                                       PLAINTIFFS


VS.                                   CIVIL ACTION NO. 4:05CV103LR


FIRST MISSISSIPPI FEDERAL CREDIT UNION                  DEFENDANT
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant First Mississippi Federal Credit Union for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Gwendolyn Blakely and Deloris Terrell have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

Plaintiffs, who are black, were terminated from their employment with First Mississippi Federal Credit Union (FMFCU) on July 9, 2004. After filing charges of race discrimination with the Equal Employment Opportunity Commission (EEOC) and receiving notice of their right to sue, plaintiffs filed the present action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, reiterating their assertion that they were terminated based on their race. In its present motion, defendant contends that summary judgment is in order because plaintiffs are unable to

establish a prima facie of discrimination, and certainly cannot prove by a preponderance of the evidence that defendant's articulated legitimate nondiscriminatory reasons for terminating them was a pretext for discrimination.  For the reasons which follow, the court must agree.

To establish a claim of discriminatory discharge, the plaintiff must first establish a prima facie case of discrimination.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).  Defendant may then offer a legitimate, non-discriminatory reason for the termination, at which time the plaintiff "'must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'"  Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (quoting Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)).

To prove a prima facie case of employment discrimination, each plaintiff "must establish that she (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by

2

someone outside the protected class, or, in the case of disparate treatment, show that other similarly situated employees were treated more favorably." Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004) (citing Okoye v. University of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)).

Turning to the facts of the case at bar, Gwendolyn Blakely was hired by defendant in 1993 as a teller and a year later, was promoted to the position of "accounting specialist," which she held up to the time of her termination. Deloris Terrell became employed by defendant in 1992 as a teller. She was promoted to "operations officer" in the spring of 2004, just a few months prior to her July 2004 termination.

By way of context, pursuant to federal banking laws, defendant was required to maintain fidelity bond coverage on all its employees, and consistent with this requirement, its personnel policies provided that all employees were required to be bonded as a condition of their continued employment with defendant. During the relevant time period, defendant's fidelity bond coverage was provided by CUMIS Insurance Society. Under defendant's contract with CUMIS, defendant was required to notify CUMIS in writing of "employee discrepancies," and specifically, to report to CUMIS any time "there was a dishonest/faithful performance of a trust act" by an employee or "[a]ny time the credit union has a Bondability question."

3

Defendant claims that in the months preceding plaintiffs' termination, it learned of conduct by both plaintiffs which caused it to question their bondability, and upon advice of counsel, notified CUMIS of these employee discrepancies, as required by the terms of the bond.  Specifically, it learned that Terrell and Blakely, who were close friends, had violated the credit union's policy on NSF checks by improperly voiding a transaction after a check had already been posted when Terrell realized there were insufficient funds to cover a $2,600 check written on her husband's business account, which caused the check be paid with credit union funds;[1] that both employees had engaged in unauthorized Visa transactions, including improperly increasing credit limits on each other's accounts and their relatives' accounts in violation of defendant's personnel policies; and that both had improperly manipulated Terrell's checking accounts by reversing overdraft charges without management approval in violation of defendant's personnel policies and the NSF policy.[2]

---

[1] Defendant claims that this action by Terrell caused Larry Davis, plaintiffs' supervisor, to question plaintiffs' bondability.  Davis contacted the credit union's attorney for advice on how to proteed, and was advised to submit to CUMIS a Bondability Notice of Employee Discrepancies for both Terrell and Blakely.

[2] Defendant states that upon discovery of the unauthorized Visa transactions and manipulation of Terrell's checking account, Larry Davis again contacted the credit union's attorney, and was advised to inform CUMIS of these transactions and to suspend plaintiffs with pay pending the outcome of internal and external investigations (including particularly the investigation by CUMIS)

Following an investigation, CUMIS determined that plaintiffs had engaged in dishonest and/or fraudulent conduct and revoked their bonds; defendant, in turn, terminated their employment. Defendant maintains that plaintiffs' race played no role in plaintiffs' discharge, and that plaintiffs were instead terminated solely based on their conduct which led CUMIS to revoke their bond and based on the fact that their bonds were revoked.

In response to defendant's motion, plaintiffs admit that their bonds were revoked, and they admit that defendant could not legally continue their employment if their bonds had been revoked. However, they argue that the only reason their bonds were revoked was because defendant intentionally misrepresented the facts surrounding the instances of conduct that led their bonds to be revoked. They insist that defendant's allegations against them were unfounded in that they were given express permission by Larry Davis to void the $2,6300 transaction and hold the check until funds came into the account to cover the check; that it was common practice to transfer funds from one account to another to avoid NSF fees but that this was always done with the approval of management; and that plaintiffs did have authority to perform temporary increases on Visa accounts without requesting authorization from management. Plaintiffs submit, therefore, that

---

into these transactions.

they have presented circumstantial evidence of pretext to satisfy their burden to defeat defendant's summary judgment motion.

In the court's opinion, plaintiffs have presented evidence that might be viewed as casting doubt on defendant's proffered reason for plaintiffs' discharge.  However, the record is devoid of any evidence suggesting a racial motivation for their discharge, and for that reason, the court concludes that summary judgment should be granted.  More to the point, plaintiffs have failed to offer evidence sufficient to establish a prima facie case of discriminatory discharge, and therefore, in the end, it matters not whether defendant's proffered legitimate, non-discriminatory reason for their termination is true.

Defendant does not dispute the first three elements of plaintiffs' prima facie case.  Both plaintiffs are members of a protected class, were qualified for their positions, and were subject to an adverse employment action.  The deficiency here is with respect to the fourth element, i.e., the requirement that plaintiffs present evidence to create a triable issue with respect to whether they were replaced by someone outside the protected class, or whether other similarly situated employees were treated more favorably.  Bryan, 375 F.3d at 360.

Summary judgment may be used to dispose of cases where a plaintiff fails to show that she was treated less favorably than similarly situated persons outside her protected classification.

6

To make a comparison of a plaintiff's treatment to that of another employee, such plaintiff must show that she and the employee are similarly situated in all relevant respects and that her employer gave preferential treatment to another employee under "nearly identical" circumstances. Bryant v. Compass Group USA Inc., 2005 WL 1404959, *5 (5th Cir. June 16, 2005). Factors to be considered include the conduct of the employee, the supervisor involved in any employment action and the employer's perception of the seriousness or severity of the employer's conduct. See Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991).

Plaintiffs herein undertook to identify putative comparators in their respective EEOC charges (which were identical in all respects save for each plaintiff's name). It is clear, however, as defendant points out in its motion, that none of the persons/incidents cited by plaintiffs provides an appropriate basis for comparison.

Plaintiffs reported in their EEOC charges that (1) Marty Alday (white) was retained even though he, while intoxicated, had wrecked a vehicle that had been repossessed by the credit union; (2) Danielle Miller (white) transferred funds from a joint account into an account of a friend without the signature of either joint owner and yet Patti Jenkins (black) was placed on probation for similar actions; (3) Debbie Swain, who was on leave from the teller line, asked to return to work and be trained as a member

7

services representative and was allowed to do so even though Patti Jenkins (black), also from the teller line, had already been trained to become a member services representative; (4) Tammara Hopson (black) was branch manager and Danielle Miller (white) a loan officer at the same branch, yet when that branch was closed, relocated and reopened, Miller was made branch manager and Hopson was made teller supervisor; (5) Josh Ivey (white) was allowed to take a laptop computer home and after being asked on several occasions to return it, he informed his supervisor that his ex-wife had it in Louisiana, and when he finally returned it, its desktop had been customized with personal information; (6) Shannon Phillips (white) refused to comply with her supervisor's directive to complete a task, was fired on the spot and removed by security and yet remains employed, and finally, (8) Kim Johnson (white) came in as a special projects coordinator, and "was trained in all the aspects of Operations Officer.  This position was appointed to Deloris Terrell, (black female), who was only trained in portions of the job.  Ms. Terrell questioned her supervisor if the position had been given to Ms. Johnson."

   None of these listed white individuals are similarly situated to plaintiffs, and none of their actions are "nearly identical" to the acts committed by plaintiffs.  Plaintiffs do not even attempt to compare the actions or conduct of Danielle Miller or Debbie Swain to the actions of plaintiffs which led to their discharge,

but rather they compare these white employees' actions to actions taken by black employees other than plaintiffs. As defendant argues, comparisons of white employees to other black employees is not evidence that similarly situated white employees were treated more favorably <u>than the plaintiffs</u> in this instance.

Nothing in plaintiffs' assertion regarding Kim Johnson, i.e., that she was trained in "all aspects of Operations Officer," can be interpreted as indicating that Johnson was similarly situated to either plaintiff, or that she was treated more favorably in any respect. As for the alleged misconduct of Marty Alday, Josh Ivey and Shannon Phillips, it is manifest that taking a laptop computer home for one's personal use, wrecking a repossessed vehicle while intoxicated and refusing a supervisor's directive are not "nearly identical" to the acts of these plaintiffs.

In addition to these individuals, plaintiffs have also alleged that two other white employees, Kathy Kemp and Lisa Morland, engaged in similar conduct and yet they were not reported to CUMIS and therefore their bond coverage was not revoked. Defendant has offered evidence that the conduct of these white employees relating to certain loan transactions did raise questions of propriety, that the conduct was reported to the credit union's attorney, and that the attorney responded that he did not believe that the conduct raised questions of their bondability. Nevertheless, these employees were informed that

9

they were to be terminated based on their conduct, and the employees immediately resigned pending termination. In its motion, defendant contends that the conduct of these two white employees was not sufficiently similar to that of plaintiffs to make them proper comparators, an assertion plaintiffs do not challenge in their response. Moreover, it is clear from the proof that these employees would also have been terminated, had they not first resigned.

From the foregoing, the court concludes that plaintiffs have failed to offer proof that similarly situated white employees were treated more favorably. Indeed, plaintiffs' response does not even address defendant's argument that plaintiffs have presented no evidence of similarly situated employees who were treated more favorably. Plaintiffs contend, instead, that to sustain their burden to prove a prima facie case (or create a triable issue with respect to their prima facie case), they can and have presented evidence to show, alternatively, that they were replaced by white employees. It is true that one way plaintiffs can establish the fourth element of their prima facie case is to show that they were replaced by someone outside the protected class. Here, however, while plaintiffs argue they were "replaced" by white employees, the proof, both from defendant and from plaintiffs themselves, shows only that following their termination, plaintiffs' job functions were performed, at least temporarily, by existing

10

employees, who retained their own positions.  Blakely's job was performed by Josh Ivy and Kim Johnson, and Terrell's job was performed by Shannon Phillips; and according to defendant, Blakely's position was ultimately filled by Kanecia Williams, who is black, and Terrell's position was dissolved.  Plaintiff has offered no proof to the contrary.

"When a terminated employee's job duties are distributed among other employees after termination, those employees do not 'replace' the terminated employee in the context of a prima facie case of discrimination."  Horak v. Glazer's Wholesale Drug Co., Inc., 2006 WL 2017110, *4 (N.D. Tex. July 19, 2006).  See also Shefferly v. Health Alliance Plan of Mich., 94 Fed. Appx. 275, 283, 2004 WL 784117, 6 (6th Cir. 2004) ("'[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'") (quoting Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 U.S. 878, 111 S. Ct. 211, 112 L. Ed. 2d 171 (1990)); Dulin v. Dover Elevator Co.,  1997 WL 88239, *2 (N.D. Miss. 1997) ("A person is not replaced when another employee is assigned to perform the plaintiff's duties or when work is redistributed among other existing employees.").

In summary, based on the evidence of record, the court concludes that plaintiffs have not adduced proof to create a

triable issue of fact with respect to their prima facie case of race discrimination, and that for this reason summary judgment is in order.

Accordingly, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 4th day of August, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE